# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

National Fire Insurance Company )
of Hartford; and The Continental )
Insurance Company, )
     **Plaintiffs**, )
)
 v. )
)    Civil Action No.:
)
Stevens & Wilkinson, Inc., Stevens )
& Wilkinson, GA, Inc., Vanessa ) _____
Williams, Angela Mosley, Karen )
Thomas, Vaughn Hassan, Thomas )
Tucker, Zelda Johnson, Lisa Austin, )
Elizabeth Houston, Regina Brinson, )
Marsha Armstrong, Joe Young, )
Joann Ross, Yvonne Brockington, )
Dianne Medley-Bloodworth, )
Raymond Bloodworth, Bertha )
McKnight, Erica Jeter, Pearl Davis, )
Paul LeBlanc, Ophelia Grant, )
Beverly Sims, Irvin Jones, Juniper )
DiGiovanni, Grady Anderson, )
Pamela Grovner, Theodorsia )
Rubenstein, Kyle Alexander Bailey, )
Alexander Henderson, Reginald )
Hall, Iregene Grovner, Jr., Bobby )
Grovner, Barbie Brooksher, Yvonne )
Jackson Grovner, Linda David, )
Katrena Alexander, Heather )
Houston-Meeks, Thomasa Akins, )
Jennifer Blocker, Erika LeCounte, )
Sabreena Vullock Labran, Abeed )
Labran, Janice Carrol, Mary )
Veronyca Mathews, Kimberly )
Wood, LaTonya Wood, Susie )
Wood, George Francis, and David )
Michael Wood, )
     **Defendants.** )

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COME National Fire Insurance Company of Hartford ("NFIH") and The Continental Insurance Company ("CIC"), and for their Complaint for Declaratory Judgment against Defendants Stevens & Wilkinson, Inc. and Stevens & Wilkinson GA, Inc. (collectively "Stevens & Wilkinson"), state as follows:

### NATURE OF THE ACTION

1.      Plaintiffs NFIH and CIC seek a judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 declaring that the insurance policies they issued to SSOE, Inc. provide no coverage for the claims made against Stevens & Wilkinson in an underlying lawsuit captioned *Vanessa Williams et al. v. Stevens & Wilkinson, Inc. et al*, Gwinnett County, Georgia, Case No. 25-C-06847-S4 ("Underlying Lawsuit").

### PARTIES

2.      Plaintiff NFIH is an insurance company organized under the laws of the State of Illinois with a principal place of business at 333 South Wabash Avenue, Chicago, Illinois.  NFICH is authorized to transact business in the State of Georgia.

3.      Plaintiff CIC is an insurance company organized under the laws of the State of Pennsylvania with a principal place of business at Three Radnor Corporate Center, 100 Matsonford Road, Ste. 200, Radnor, Pennsylvania, 19087.  CIC is authorized to transact business in the State of Georgia.

2

4.    Defendant Stevens & Wilkinson, Inc. is a Georgia corporation with its principal place of business located at 100 Peachtree St., NW, Suite 2500, Atlanta, Georgia, 30303.

5.    Defendant Stevens & Wilkinson, GA, Inc. is a Georgia corporation with its principal place of business located at 100 Peachtree St., NW, Suite 2500, Atlanta, Georgia, 30303.

6.    No declaratory relief is presently sought directly against any of the other named defendants (the "Individual Defendants"), who are named defendants as interested parties in this declaratory judgment action. For purposes of diversity of citizenship of the parties, none of the Individual Defendants are residents of or domiciled in the State of Illinois or Pennsylvania.

      a.    Defendants Vanessa Williams and Angela Mosley, named as defendants as the Personal Representatives of the Estate of Jacqueline Crews Carter, are residents of and domiciled in the State of Georgia.

      b.    Defendant Karen Thomas is a resident of and domiciled in the State of Georgia.

      c.    Defendant Kisha Haraway, named as a defendant as the Personal Representative of the Estate of Isaiah Thomas, is a resident of and domiciled in the State of Florida.

d.    Defendant Vaughn Hassan, named as a defendant as the Personal Representative of the Estate of Carlotta McIntosh, is a resident of and domiciled in the State of Florida.

e.    Defendant Thomas Tucker, named as a defendant as the Personal Representative of the Estate of Cynthia Gibbs, is a resident of and domiciled in the State of Georgia.

f.    Defendants Zelda Johnson and Lisa Austin, named as defendants as Executrixes of the Estate of Queen Welch, are residents of and domiciled in the State of Georgia.

g.    Defendant Elizabeth Houston is a resident of and domiciled in the State of Georgia.

h.    Defendant Regina Brinson is a resident of and domiciled in the State of Florida.

i.    Defendant Marsha Armstrong is a resident of and domiciled in the State of Georgia.

j.    Defendant Joe Young is a resident of and domiciled in the State of Georgia.

k.    Defendant Joann Ross is a resident of and domiciled in the State of Georgia.

l.    Defendant Yvonne Brockington is a resident of and domiciled in the State of Florida.

m.  Defendant Dianne Medley-Bloodworth is a resident of and domiciled in the State of Georgia.

n.  Defendant Raymond Bloodworth is a resident of and domiciled in the State of Georgia.

o.  Defendant Bertha McKnight is a resident of and domiciled in the State of Florida.

p.  Defendant Erica Jeter is a resident of and domiciled in the State of Florida.

q.  Defendant Pearl Davis is a resident of and domiciled in the State of Florida.

r.  Defendant Paul LeBlanc is a resident of and domiciled in the State of Florida.

s.  Defendant Ophelia Grant is a resident of and domiciled in the State of Georgia.

t.  Defendant Beverly Sims is a resident of and domiciled in the State of South Carolina.

u.  Defendant Irvin Jones is a resident of and domiciled in the State of South Carolina.

v.  Defendant Juniper DiGiovanni is a resident of and domiciled in the State of Florida.

5

w.      Defendant Grady Anderson is a resident of and domiciled in the State of Georgia.

x.      Defendant Pamela Grovner is a resident of and domiciled in the State of Georgia.

y.      Defendant Theodorsia Rubenstein is a resident of and domiciled in the State of Georgia.

z.      Defendant Kyle Alexander Bailey is a resident of and domiciled in the State of Georgia.

aa.     Defendant Alexander Henderson is a resident of and domiciled in the State of Georgia.

bb.     Defendant Reginald Hall is a resident of and domiciled in the State of Georgia.

cc.     Defendant Iregene Grovner, Jr. is a resident of and domiciled in the State of Georgia.

dd.     Defendant Bobby Grovner is a resident of and domiciled in the State of Georgia.

ee.     Defendant Barbie Brooksher is a resident of and domiciled in the State of Florida.

ff.     Defendant Yvonne Jackson Grovner is a resident of and domiciled in the State of Georgia.

gg.   Defendant Linda David is a resident of and domiciled in the State of Georgia.

hh.   Defendant Katrena Alexander is a resident of and domiciled in the State of Florida.

ii.   Defendant Heather Houston-Meeks is a resident of and domiciled in the State of Florida.

jj.   Defendant Thomasa Akins is a resident of and domiciled in the State of Georgia.

kk.   Defendant Jennifer Blocker is a resident of and domiciled in the State of Georgia.

ll.   Defendant Erika LeCounte is a resident of and domiciled in the State of Georgia.

mm.   Defendant Sabreena Vullock Labran is a resident of and domiciled in the State of Georgia.

nn.   Defendant Abeed Labran is a resident of and domiciled in the State of Georgia.

oo.   Defendant Janice Caroll is a resident of and domiciled in the State of Georgia.

pp.   Defendant Mary Veronyca Mathews is a resident of and domiciled in the State of Georgia.

qq.    Defendant Kimberly Wood is a resident of and domiciled in the State of Georgia.

rr.    Defendant LaTonya Wood is a resident of and domiciled in the State of Georgia.

ss.    Defendant Susie Wood is a resident of and domiciled in the State of Georgia.

tt.    Defendant George Francis is a resident of and domiciled in the State of Georgia.

uu.    Defendant David Michael Wood is a resident of and domiciled in the State of Georgia.

## JURISDICTION

7.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332, because the dispute is between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.    This court has personal jurisdiction over Defendant Stevens & Wilkinson, Inc. as it is a Georgia corporation with its principal place of business in Atlanta, Georgia, the Incident took place in Georgia, and the Underlying Lawsuit is pending in Georgia.

9.    This court has personal jurisdiction over Defendant Stevens & Wilkinson, GA, Inc. as it is a Georgia corporation with its principal place of business

in Atlanta, Georgia, the Incident took place in Georgia, and the Underlying Lawsuit is pending in Georgia.

10.    This court has personal jurisdiction over the Individual Defendants because they allege to have sustained bodily injuries arising out of an incident that took place in Georgia and are plaintiffs in the Underlying Lawsuit, which is pending in Georgia.

11.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because Defendants Stevens & Wilkinson reside in this judicial district, Stevens & Wilkinson submitted their insurance claim to CNA from its offices in Atlanta, Georgia, which is within this district, the Underlying Lawsuit is pending in Gwinnett County, which is located in this district.  This action is properly filed in the Atlanta Division under LR 3.1(B) because defendants Stevens & Wilkinson, Inc. and Stevens & Wilkinson GA, Inc. reside in Fulton County, which is within the Atlanta Division, and a substantial part of the events giving rise to this declaratory-judgment action occurred in this Division.

12.    A real and present case and controversy is presented because Plaintiffs seek an adjudication regarding their rights under insurance policies issued to Stevens & Wilkinson, with respect to the Underlying Lawsuit.

## FACTUAL BACKGROUND

13.    On June 10, 2025, Plaintiffs filed a lawsuit against Defendants Stevens & Wilkinson, Inc.; Stevens & Wilkinson GA, Inc.; Centennial Contractors

9

Enterprises, Inc. ("Centennial"); EMC Engineering Services, Inc. ("EMC"); and Crescent Equipment Co., Inc. d/b/a Crescent Marine Access ("Crescent" and collectively the "Defendants"). (**See Ex. A, "Complaint"**).

14.    The Complaint arises from a tragic incident (the "Incident") that took place on October 19, 2024, when an 80-foot gangway at the Sapelo Island Marsh Landing Dock suffered a catastrophic failure and collapsed. Ex. A at ¶ 1.

15.    It is alleged that the subject 80-foot gangway was installed at the Sapelo Island Marsh Landing Dock as part of a large-scale rehabilitation project that involved complete replacement of the docks, gangways, and attendant structures at the Sapelo Island Marsh Landing Dock (the "Project"). Ex. A at ¶ 3.

**A.    Stevens & Wilkinson Performed Professional Architectural and Design Services**

16.    Stevens & Wilkinson was hired as the architect and design professional on the Project and pursuant to the contract it entered with the Georgia Department of Natural Resources was allegedly responsible for furnishing all design and construction contract administration services for the Project. Ex. A at ¶¶ 90, 91.

17.    As to the other defendants in the Underlying Lawsuit, the Complaint alleges that Centennial was hired to serve as the primary Contractor on the Project and was responsible for supervising the Project work and for coordinating all portions of the Project work. Ex. A at ¶ 90.

18.    The Complaint alleges EMC was retained by Stevens & Wilkinson as one of its consultants to serve as the civil/structural engineer on the Project for marine structures, including the docks and gangways. Ex. A at ¶ 93.

19.    Finally, Crescent was hired as the contractor responsible to design, fabricate, and deliver the subject gangway to be installed on the Project. Ex. A at ¶ 94.

20.    With respect to Stevens & Wilkinson, the Complaint alleges that any competent Design Professional should have noticed the dangerous deficiencies in Crescent's design and construction of the gangway and should have taken immediate corrective action and ensured the gangway was not installed.  Ex. A at ¶ 133.

21.    The Complaint alleges that Stevens & Wilkinson also failed to ensure that Crescent provide design calculations and drawings signed and sealed by a Professional Engineer as required before permitting the gangway to be fabricated let alone installed. Ex. A at ¶ 134.

22.    The Complaint alleges that Stevens & Wilkinson failed to abide by its responsibilities for ensuring compliance with the Project Specifications because it was not permitted to authorize Crescent's fabrication of the gangway until Crescent submitted final calculations and drawings demonstrating the gangway was safe and would support the minimum live loads. Ex. A at ¶ 140.

23.    The Complaint further alleges that Stevens & Wilkinson knew or should have known that permitting the gangway to be approved for construction and

11

installed without the required submittals would potentially result in an unsafe gangway incapable of supporting the required live loads and subjecting countless citizens to grave danger and that they violated their duties and responsibilities by allowing the gangway to be installed on the Project despite the absence of the required submittals. Ex. A at ¶ 165.

24.    The Complaint asserts two causes of action against Stevens & Wilkinson. Ex. A at ¶¶ 232-254.

25.    Count I and Count II each provide an identical list of purportedly negligent acts or omissions by Stevens & Wilkinson:

a.  Failing to ensure the required submittals were provided for the subject gangway prior to its installation on the Project;

b.  Failing to ensure design calculations were provided by Crescent demonstrating the subject gangway met the performance criteria set forth in the Project Specifications;

c.  Failing to ensure a Professional Engineer reviewed, stamped, and sealed the final design calculations and/or shop drawings for the subject gangway prior to the gangway being installed on the Project;

d.  Failing to certify the subject gangway was in compliance with the provisions of the Contract Documents;

e. Failing to require EMC Engineers to review, approve, stamp and seal final design calculations and/or shop drawings for the subject gangway;

f. Permitting the subject gangway to be installed on the Project;

g. Permitting the subject gangway to be installed on the Project despite the lack of required submittals;

h. Permitting the subject gangway to be installed on the Project despite its inability to safely withstand live loads of at least 100 PSF;

i. Permitting the subject gangway to be installed on the Project despite the fact that it was dangerous and susceptible to collapse;

j. Failing to ensure design calculations for the subject gangway were performed;

k. Failing to ensure design calculations for the subject gangway were provided;

l. Failing to properly oversee the design, construction, and installation of the subject gangway;

m. Failing to properly supervise and oversee the work of its subcontractors, including but not limited to EMC Engineering;

n. Failing to abide by the terms of its contract with DNR;

o. Failing to abide by the Contract Documents, including but not limited to the Specifications;

13

p. Failing to abide by the applicable terms and requirements of The Process Guide;

q. Failing to ensure the subject gangway satisfied the design criteria set forth in the Project Specifications;

r. Failing to ensure the subject gangway was designed such that it was capable of safely supporting live loads of at least 100 PSF;

s. Failing to recognize that design calculations for the subject gangway were not performed and provided or were otherwise totally inadequately performed and take appropriate corrective action;

t. Failing to recognize that the final design/shop drawings for the subject gangway were not stamped and sealed by a professional engineer;

u. Permitting the subject gangway to be installed on the Project despite no Professional Engineer ever reviewing, approving, and/or certifying the final design calculations; and

v. Permitting the subject gangway to be installed on the Project despite no Professional Engineer stamping and sealing the final design calculations and/or shop drawings.

Ex. A at ¶¶ 242, 249.

26. It is alleged that, as a result of Stevens & Wilkinson's conduct, the underlying plaintiffs suffered injuries and damages. Ex. A at ¶¶ 243, 251.

14

27.    The underlying plaintiffs attached to the underlying complaint an affidavit of Scott Nacheman, setting forth the negligent acts or omissions of Stevens & Wilkinson, and the factual basis for each allegation. Ex. B.

28.    Scott Nacheman's affidavit states that Stevens & Wilkinson "maintains ultimate responsibility for implementation of the contractual requirements of the Project and ensuring that contractual requirements and standard of care are upheld on the Project." Ex. B at ¶ 28.

29.    Scott Nacheman's affidavit refers to Assignment Order No. 31 DNR-462-492-88101-AE1 ("Assignment Order"), which provides that the "Scope of Work" is to "provide Professional Design, Civil Permitting and Construction Documents Services for the Meridian and Marsh Landings Improvements located at Sapelo Island, in McIntosh County, Georgia." Ex. B at ¶ 6.

30.    Scott Nacheman's affidavit states that the Assignment Order states Stevens & Wilkinson is the "Design Professional" for the Project. Ex. B at ¶ 7.

31.    Scott Nacheman's affidavit states that "neither [Stevens & Wilkinson] nor their subconsultants received or reviewed 'signed and sealed' calculations and drawings for the gangways as required by the Project Manual," yet Stevens & Wilkinson "still permitted the installation and use of said gangways as both Design Professional and designated Building Official for the subject Project." Ex. B at ¶ 32.

32.    Scott Nacheman's affidavit further states that "[Stevens & Wilkinson's] failure to request and review, or require their subconsultants to request and review,

15

documents explicitly required by the Contract Documents is a clear violation of the standard of care related to delegated design and project delivery." Ex. B at ¶ 34.

**THE POLICIES**

33.     National Fire Ins. Co. of Hartford ("NFIH") issued CNA Paramount policy no. 6020543354 to SSOE, Inc. for the policy period beginning December 30, 2023, through December 30, 2024 ("NFIH Policy"). A copy of the NFIH Policy is attached hereto as Exhibit C.

34.     The NFIH Policy includes a Professional Services General Liability Coverage Part ("GL Coverage"), with limits of $1M Each Occurrence, $2M in the General Aggregate, and a $20M Policy Aggregate Limit.

35.     The NFIH Policy's GL Coverage includes **Coverage A** – Bodily Injury and Property Damage Liability.   Subject to certain exclusions, conditions, and limitations, the NFIH Policy provides coverage as follows:

1.      **Insuring Agreement**

a.      We will pay those sums that the **Insured** becomes legally obligated to pay as **damages** because of **bodily injury** or **property damage** to which this insurance applies. We will have the right and duty to defend the **Insured** against any **suit** seeking those **damages**. However, we will have no duty to defend the **Insured** against any **suit** seeking **damages** for **bodily injury** or **property damage** to which this insurance does not apply…

. . .

b.      This insurance applies to **bodily injury** and **property damage** only if:

16

    **(1)**    The **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**;

    **(2)**    The **bodily injury** or **property damage** occurs during the **policy period**;

\*     \*     \*

36.   The NFIH Policy includes the following relevant definitions:

**SECTION V – DEFINITIONS**

\*     \*     \*

**3.**    **Bodily injury** means bodily injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury sustained by that person at any time which results as a consequence of the physical injury, sickness or disease.[1]

\*     \*     \*

**13.**    **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. Faulty workmanship does not constitute an **occurrence**. But when faulty workmanship performed by a **Named Insured** or on a **Named Insured's** behalf causes **bodily injury** or causes **property damage** to property other than your work, then such **bodily injury** or **property damage** will be considered caused by an **occurrence**. However, such **bodily injury** or **property damage** that is expected or intended by a **Named Insured**, or by anyone for whom **the Named Insured** is legally responsible, will not be considered caused by an **occurrence.**[2]

\*     \*     \*

37.   The NFIH Policy includes two substantially similar professional services exclusions which provide as follows:

**Contractors - Professional Liability Exclusion Endorsement**

\*     \*     \*

---

[1] As amended by the Architects, Engineers and Surveyors General Liability Extension Endorsement (CNA74858XX (1-15)).

[2] As amended by the Expanded Occurrence Endorsement (CNA75018ZZ (1-15)).

17

It is understood and agreed that under **COVERAGES, Coverage A - Bodily Injury And Property Damage Liability** and **Coverage B - Personal And Advertising Injury Liability**, the paragraphs entitled **Exclusions**, are amended to add the following exclusion:

This insurance does not apply to **bodily injury**, **property damage or personal and advertising injury** arising out of the rendering of or failure to render professional services by the **Named Insured** or on the **Named Insured's** behalf.

As used herein, **professional services** means:

A.     engineering, architectural or surveying services to others in the **Named Insured's** capacity as an engineer, architect or surveyor; or

B.     providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work the **Named Insured** performs.

Such **professional services** include:

1.     preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

2.     supervisory or inspection activities performed as part of any related architectural or engineering activities.

However**, professional services** do not include services within construction means, methods, techniques, sequences and procedures employed by the **Named Insured** in connection with the **Named Insured's** operations in the **Named Insured's** capacity as a construction contractor.

\*     \*     \*

**Engineers, Architects or Surveyors Professional**

**Liability Exclusion Endorsement**

\*     \*     \*

It is understood and agreed that under **COVERAGES, Coverage A - Bodily Injury And Property Damage Liability** and **Coverage B - Personal And Advertising Injury Liability**, the paragraphs entitled **Exclusions**, are amended to add the following exclusion:

This insurance does not apply to **bodily injury**, **property damage** or **personal and advertising injury** arising out of the rendering of or failure to render any professional services by the **Named Insured** or any engineer, architect or surveyor who is either employed by the **Named Insured** or performing work on the **Named Insured's** behalf in such capacity.

Professional services include:

A.    the preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; and

B.    supervisory, inspection, architectural or engineering activities.

\* \* \*

38.    The Continental Insurance Company ("CIC") issued CNA Paramount Excess and Umbrella Liability Policy No. 6020543404 to SSOE, Inc. for the policy period beginning December 30, 2023 through December 30, 2024 ("CIC Policy"). A copy of the CIC Policy is attached hereto as Exhibit D.

39.    The CIC Policy includes **Coverage A** – Excess Follow Form Liability and **Coverage B** – Umbrella Liability.  The Insuring Agreements of Coverage A and Coverage B provide as follows:

A.    **Coverage A - Excess Follow Form Liability**

The Insurer will pay on behalf of the **Insured** those **damages** in excess of the applicable **underlying limits**. Coverage hereunder will attach only after the full amount of the applicable **underlying limits** have been exhausted through payment in legal currency of covered loss under all applicable **underlying insurance** and to which this Coverage A applies. Coverage A under this Policy will then apply in conformance with the provisions of the applicable **underlying insurance** except for the premium, limits of insurance, deductible, retentions, or any defense obligations and any other terms and conditions specifically set forth in this Policy. Upon exhaustion of the applicable **underlying limits,** the Insurer shall only pay for

19

damages in excess of the applicable **underlying limits**. This Coverage A does not provide coverage for any loss not covered by the applicable **underlying insurance** except and to the extent that such loss is not paid under the applicable **underlying insurance** solely by reason of the exhaustion of the applicable **underlying limits** through payment of loss thereunder.

This Coverage applies:

**1.**   if the applicable **underlying insurance** is on an occurrence basis, then only if that which must take place in the policy period of the **underlying insurance** in order to trigger coverage, takes place during this **policy period**; …

\* \* \*

**B.**   **Coverage B - Umbrella Liability**

The Insurer will pay on behalf of the **Insured** those **damages** in excess of the **retained amount**:

1.   that an **Insured** becomes legally obligated to pay because of **bodily injury**, **property damage** or **personal and advertising injury**; or

2.   because of liability for **bodily injury** or **property damage** assumed under an **insured contract**, provided the **bodily injury** or **property damage** occurs subsequent to the execution of such insured contract;

and provided that:

**a.**   **bodily injury** or **property damage** occurs during the **policy period**;

**b.**   the **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory**;

\* \* \*

Provided, however, that **Coverage B - Umbrella Liability:**

**i.**   does not apply to:

**(a)**   any part of **damages** to which **underlying insurance** applies; or

**(b)**   any part of **damages** to which **underlying insurance** would have applied regardless of:

**(1)**   the availability of **underlying insurance**; or

20

>    **(2)**    the exhaustion of the applicable **underlying limits**;
>
> **(c)**    any **defense costs** related to **damages** as described in **a**. and **b**. above

*    *    *

40.    The CIC Policy also includes the following endorsement:

**UNDERLYING INSURANCE COVERAGE LIMITATION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY

PARAMOUNT UMBRELLA LIABILITY POLICY

It is understood and agreed as follows:

If this endorsement is attached to the:

**A.**    PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY, then under **EXCLUSIONS**, the section entitled **Coverage B – Umbrella Liability Coverage Exclusions**; or

**B.**    PARAMOUNT UMBRELLA LIABILITY POLICY, then under **EXCLUSIONS,** the section entitled **Coverage A – Umbrella Liability Exclusions,**

it is amended with the addition of the following new exclusion:

> **Underlying Insurance Coverage Limitation**
>
> Notwithstanding anything to the contrary, this policy does not provide broader coverage than that which is provided by any **underlying insurance**.
>
> In the event of any difference between:
>
> a.    exclusions, restrictions, limiting terms or conditions in this policy and
>
> b.    exclusions, restrictions, limiting terms or conditions in the **underlying insurance**;
>
> addressing the same general risk or hazard, then the more restrictive provision shall apply.

All other terms and conditions of the policy remain unchanged.

*    *    *

41.    The CIC Policy includes the following relevant definitions:

21

## VII.  DEFINITIONS

\*       \*       \*

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*       \*       \*

**Retained amount** means the self insured retention as set forth on the Declarations of this Policy or the amount payable by **other insurance**, whichever is greater.

\*       \*       \*

**Underlying insurance** means policies of insurance listed in the Schedule of **Underlying Insurance** including renewal or replacement of such insurance which is neither more restrictive nor more broad than that listed in the aforementioned Schedule of **Underlying Insurance.**

\*       \*       \*

**Underlying insurer** means the insurer providing the **underlying insurance**. It does not include any insurer whose policies were purchased specifically to be in excess of this policy.

**Underlying limits** means the limits of insurance as set forth in the Schedule of **Underlying Insurance.**

\*       \*       \*

## COUNT I – DECLARATORY JUDGMENT
## NO DUTY TO DEFEND OR INDEMNIFY UNDER NFIH POLICY

42.    NFIH sets forth and incorporates the allegations of Paragraphs 1-41 as though fully set forth herein.

43.    The NFIH Policy's insuring agreement provides coverage for **bodily injury** caused by an **occurrence** during the **policy period**.

44.    The Complaint does not allege any **occurrence** as defined.

22

45.    The NFIH Policy's Engineers, Architects or Surveyors Professional Liability Exclusion bars coverage for **bodily injury** arising out of the rendering of or failure to render any professional services by Stevens & Wilkinson or any engineer, architect or surveyor who is either employed by Stevens & Wilkinson or performing work on Stevens & Wilkinson's behalf in such capacity.

46.    Additionally, the NFIH Policy's Professional Liability Exclusion Endorsement bars coverage for **bodily injury** arising out of the rendering of or failure to render professional services by Stevens & Wilkinson or on Stevens & Wilkinson's behalf.

47.    With respect to Stevens & Wilkinson, the Underlying Lawsuit seeks damages because of **bodily injury** arising out of the rendering of or failure to render professional services by Stevens & Wilkinson.

48.    All of the damages sought in the Underlying Lawsuit as respects Stevens & Wilkinson are sought because of **bodily injury** arising out of the rendering of or failure to render professional services by Stevens & Wilkinson.

49.    The Underlying Lawsuit's complaint includes two  causes of action against Stevens & Wilkinson alleging the negligent rendering of professional services.

50.    The NFIH Policy does not afford coverage to Stevens & Wilkinson for the Underlying Lawsuit.

51.     NFIH has no duty to defend Stevens & Wilkinson against the Underlying Lawsuit.

52.     NFIH has no duty to indemnify Stevens & Wilkinson against the Underlying Lawsuit.

## COUNT II - DECLARATORY JUDGMENT
## NO DUTY TO DEFEND OR INDEMNIFY UNDER CIC POLICY

53.     CIC sets forth and incorporates the allegations of Paragraphs 1-52 as though fully set forth herein.

54.     The CIC Policy's Excess Follow Form Liability insuring agreement provides coverage only "in conformance with the provisions of the applicable **underlying insurance** except for the premium, limits of insurance, deductible, retentions, or any defense obligations and any other terms and conditions specifically set forth in this Policy."

55.     **Underlying insurance** is defined to include the NFIH Policy, which is listed in the CIC Policy's Schedule of Underlying Insurance.

56.     Therefore, because no coverage is available under the NFIH Policy to Stevens & Wilkinson for the Underlying Lawsuit, no coverage is likewise available under the CIC Policy's Excess Follow Form Liability insuring agreement.

57.     Further, the CIC Policy's Umbrella Liability insuring agreement provides coverage for **bodily injury** caused by an **occurrence** during the **policy period**.

24

58. The Complaint does not allege an **occurrence** as defined.

59. However, the CIC Policy's Umbrella Liability insuring agreement is subject to exclusions and endorsements, one of which provides that the Umbrella Liability coverage does not provide broader coverage than that which is provided by any **underlying insurance**.

60. Additionally, the CIC Policy's Umbrella Liability insuring agreement is amended by endorsement to provide, "In the event of any difference between: a. exclusions, restrictions, limiting terms or conditions in this policy; and b. exclusions, restrictions, limiting terms or conditions in the **underlying insurance**; addressing the same general risk or hazard, then the more restrictive provision shall apply."

61. Therefore, the CIC Policy's Umbrella Liability insuring agreement does not apply, because it is subject to the NFIH Policy's Professional Liability exclusion and its Engineers, Architects or Surveyors Professional Liability exclusion, each of which apply to bar coverage to Stevens & Wilkinson with respect to the Underlying Lawsuit.

62. CIC has no duty to defend Stevens & Wilkinson against the Underlying Lawsuit.

63. CIC has no duty to indemnify Stevens & Wilkinson against the Underlying Lawsuit.

WHEREFORE, Plaintiffs NFIH and CIC request that this Court enter a judgment adjudicating and declaring:

25

a)      NFIH has no duty to defend Stevens & Wilkinson against the Underlying Lawsuit;

b)      NFIH has no duty to indemnify Stevens & Wilkinson against the Underlying Lawsuit;

c)      NFIH is entitled to recoup defense fees paid to defend Stevens & Wilkinson against the Underlying Lawsuit;

d)      CIC has no duty to defend Stevens & Wilkinson against the Underlying Lawsuit;

e)      CIC has no duty to indemnify Stevens & Wilkinson against the Underlying Lawsuit; and

f)      That this Court grant Plaintiffs any further relief it deems just and proper.

Respectfully submitted, this 16th day of April, 2026.

**GORDON REES SCULLY MANSUKHANI LLP**

*/s/ V. Phillip Hill IV*
V. Phillip Hill IV
Georgia Bar No. 637841

55 Ivan Allen Blvd. NW            *Attorneys for Plaintiffs National Fire*
Suite 750                         *Insurance Company of Hartford and*
Atlanta, Georgia 30308            *Continental Insurance Company*
(404) 869-9054
phill@grsm.com

26